UNITED STATES DISTRICT COURT
FILED
NOV 17 2026
ANDREW W. MOELLER, CLERK
WESTERN DISTRICT OF NY

**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF NEW YORK**

| | |
|---|---|
| UNITED STATES OF AMERICA,<br>Plaintiff,<br>v.<br>John Edward Cipolla,<br>Defendant. | Case No. 1:11-mj-00126-HKS<br>DECISION AND ORDER: Dkt. 15<br>(Schroeder, M.J.) |

# DEFENDANT'S NOTICE OF OBJECTIONS AND REQUEST FOR DISTRICT-JUDGE REVIEW OF THE OCTOBER 29, 2026 DECISION AND ORDER (recommendations), WITH MEMORANDUM IN SUPPORT

## PRELIMINARY STATEMENT

John Edward Cipolla, appearing pro se, objects to the Decision and Order of United States Magistrate Judge H. Kenneth Schroeder, Jr., filed October 29, 2026 (served November 3, 2026) (Dkt. 15), denying his motion to expunge the records of the dismissed and declined charges against him (Dkt. 7). He asks an Article III district judge to review the order, set it aside, and either grant the relief requested, Expungement, or remand for the findings the order never made. These objections are submitted under the applicable referral and review procedure, including 28 U.S.C. § 636(b), Federal Rule of Criminal Procedure 59, and W.D.N.Y. Local Criminal Rule 59(c), to the extent each applies. If a different review mechanism governs, Mr. Cipolla asks the Court to identify it and treat these objections as properly filed under it.

Judge Schroeder's order mistakenly rests on a single premise: that Mr. Cipolla's only theory of official misconduct was that he "could not legally be charged under the HIPAA statute as a matter of law." Dkt. 15 at 2, 5. These objections describe four distinct allegations of law enforcement misconduct. The order does not separately address the other three (3): a) that the affiant, Special Agent, Thomas Provost, Federal Bureau of Investigation (FBI), concealed Ed Jones' admission that the records had been discarded before the conduct charged; b) that the affiant concealed Art Boese's "covered entity" status while charging the one person who could not be charged directly-Mr. Cipolla; and c) that Kathy Hochul, then the Erie County Clerk, was involved in the response to the discovery of the records. Mr. Cipolla contends, her public-facing involvement was the material cause for the investigation and charges. Kathy Hochul's husband, William Hochul, then served as the United States Attorney for the Western District of New York. Three (3) of the four (4) allegations of official fraud received no finding, no analysis, and no mention.

That silence is not a drafting oversight. It is the case. The governing standard, which the order itself recited, reserves expungement for "extreme cases of government misconduct." In re Farkas, 783 F. Supp. 102, 103 (E.D.N.Y. 1992). Mr. Cipolla argues that the allegations presented below should be considered together; he also requests consideration of the Hochul-related allegation to the extent it was not previously presented. The record Mr. Cipolla asks the Court to expunge is the product of that law enforcement misconduct (fraud). This is not a case about mere

travel inconvenience or explaining an old arrest. It is a case about whether the government may preserve a record it obtained by fraud.

For the reasons below, the order applied the wrong legal question, disregarded disputed allegations of fraud without a hearing or findings, and treated its own probable-cause determination as immune from the challenge directed at it. It is contrary to law and clearly erroneous. The district judge should vacate it, consider the three additional allegations, and grant expungement — or, at the least, order an evidentiary hearing on the allegations of official fraud.

## STANDARD OF REVIEW

Rule 59(a) permits a party to object to a magistrate judge's order on a matter that does not dispose of a charge or defense and requires the district judge to "modify or set aside any part of the order that is contrary to law or clearly erroneous." Fed. R. Crim. P. 59(a); see 28 U.S.C. § 636(b)(1)(A); W.D.N.Y. Local Crim. R. 59(c)(1). Local Rule 59(c)(1) requires the objecting party to identify "the specific matters to which the party objects and the manner in which it is claimed that the order is clearly erroneous or contrary to law." These objections do so, issue by issue.

Two points about the standard of review matter here. First, an order is "contrary to law" when it applies the wrong legal test, and it is clearly erroneous when it resolves a dispositive factual question on a record that cannot support the resolution. Second, the order finally denied the only relief Mr. Cipolla sought in a closed case. To the extent that makes the ruling dispositive of the matter rather than a pretrial determination, Mr. Cipolla requests de novo review under 28 U.S.C. § 636(b)(1)(B) and Rule 59(b)(3). He does not concede that a magistrate judge could finally adjudicate a post-dismissal expungement application absent the authorization the order does not show.

## I. THE ORDER AND THE RECORD

On October 28, 2011, the criminal complaint in this case was dismissed on the Government's motion under Federal Rule of Criminal Procedure 48(a). Dkt. 6; Dkt. 7, Ex. A, p. 5. The FBI identity-history record lists August 5, 2011 arrest data and states that the investigation as to the listed federal charges was closed because the United States Attorney's Office declined prosecution. Dkt. 7, Ex. B, pp. 9–10; Dkt. 15, pp. 1, 5. Mr. Cipolla maintains that the charges did not result in a conviction. Dkt. 7, pp. 3–4. . Mr. Cipolla does not contend otherwise. His contention is narrower and different: that the charges were procured through an affidavit that concealed, at least, four (4) material facts, and that a record produced that way should not outlast the case that produced it.

The FBI history contains two related arrest-data entries dated August 5, 2011 and August 5, 2011A. The entries alone do not establish two separate physical arrests. The first labels two offenses and cross-references the second entry; the second identifies the federal charges and declinations. Dkt. 7, Ex. B, pp. 9–10. The scope and final disposition of every entry should be verified before any record is altered.

The motion described an Italian-citizenship application in process for Mr. Cipolla and his daughter. Dkt. 7, ¶ 8. A separate memorandum concerns his Paraguayan residency. Dkt. 8. The order describes that memorandum as recommending an FBI certificate without "observations" because of an asserted Paraguayan identity-card requirement. Dkt. 15, p. 2. These are different procedures, not evidence that the same foreign rule applies in both countries. Although the

separately supplied copy of Dkt. 8 contains only its introductory page, a four-page version of the memorandum appears as an exhibit to the reply (Dkt. 13, pp. 71–74), and it distinguishes the migration authority's possible acceptance of records with observations and disposition documents from the separate identification authority's asserted no-observation policy (id. at 72–74). No individualized denial is included because the Paraguay attorney handles thousands of residency applications annually and knows from experience that the appearance of any observations results in automatic denial. Therefore, the attorney advises Residency applicants to file a motion to expunge any false arrests prior to applying. The Government contested misconduct and relied on the § 1001 false-statement allegation in the complaint. Dkt. 10, p. 2. However, the government never specified what statement was false, never provided video evidence or a witness statement with firsthand (actual) knowledge. Therefore, the accusatory instrument was insufficient on its face and the arrest warrant should not have been issued. Mr. Cipolla disputed the factual premise and alleged, among other things, authorization from Avalon's owner Art Boese to access records, a belief that he had removed business materials, no knowledge that patient files were included, and access to the office by other people. Dkt. 13, pp. 3–4. The sworn complaint affidavit is reproduced at Dkt. 13, pp. 56–70. It quotes Boese's authorization, and reports on Mr. Cipolla's stated understanding of the records, Avalon employees' access, Avalon's Landlord access and Avalon's property manager's access to the records. Dkt. 1, ¶¶ 18, 20, 22–24, reproduced at Dkt. 13, pp. 65–69. Despite Boese's acknowledgment of responsibility, Boese's authorization for Mr. Cipolla to access Avalon's business records and Ed Jones' admission to throwing the records in a dumpster prior to charging Mr. Cipolla (making the charges a legal and factual impossibility), Provost disregarded the admissions and charged Mr. Cipolla anyway.

Agent Provost's own affidavit acknowledges Mr. Cipolla's authorization and access. But the four (4) omissions alleged are not the subjects the affidavit discussed. The affidavit does not report Ed Jones', the maintenance man, admission that he discarded the records before the conduct charged. The affidavit does not state that Boese was a "covered entity" who could have been charged but was not, who acknowledged responsibility for the patient records, admitted no interest in safeguarding them, and admitted to delivering them to the Erie County Department of Mental Health for storage knowing ECDMH did not have oversight for the patient records. It does not state that Mr. Cipolla was **not** a "covered entity" and, therefore, couldn't be charged (mistake- Boese, the 'covered entity" should've been charged, not Mr. Cipolla). To Mr. Cipolla's knowledge, it does not disclose Kathy Hochul's relationship to the United States Attorney, William Hochul, nor does it disclose the identities of the DMV's employees who actually discovered the records in a dumpster- Christian Adam and Thomas Garlick or explain any role Kathy Hochul may have had in the events leading to the investigation. Again, Agent Provost's own affidavit acknowledges that Mr. Cipolla had lawful authorization from Art Boese to access Avalon's business records thereby making the charges a legal and factual impossibility. Further, Provost's affidavit does not address Mr. Cipolla's allegations of fraud and Judge Schroeder's order does not mention the three (3) other allegations.

Mr. Cipolla sought a focused hearing or permission to supplement, and, alternatively, an accurate and complete record of the disposition. Dkt. 13, pp. 4–6. His supplemental reply argued that an attorney's unsupported factual statements in an unsigned unsworn memorandum are not evidence. Supplemental Reply, filed Aug. 24, 2026, p. 1. Mr. Cipolla's allegations remain disputed; they are not prior judicial findings. Moreover, none of them have been tried and found false.

## II. MR. CIPOLLA'S NOTES ON THE DECISION AND ORDER

Mr. Cipolla's notes on the Decision and Order follow. They are reproduced in substance, because they identify the four (4) separate allegations on which these objections rest. The note's assertion that the Kathy Hochul/William Hochul relationship clearly established a conflict is his allegation, not a judicial finding.

> *"Agent Provost: (a) deliberately concealed the material fact that I could not be charged with a HIPAA [violation] because I was not a "covered entity" (fraud 1); (b) Provost deliberately concealed the material fact that Ed Jones admitted to throwing the records out (before I was charged) and Provost deliberately omitted Ed Jones' admission from his affidavit (fraud 2); (c) Provost deliberately concealed that Art Boese was a 'covered entity' that could be charged, but instead selected to charge me — selective prosecution (fraud 3); Kathy Hochul, then Erie County Clerk, was the catalyst for the charges and her husband, William Hochul, was the U.S. Attorney for the Western District of NY, clearly establishing a conflict of interest (fraud 4). In light of the totality of the circumstances, four (4) counts of fraud, unrebutted by the USA's office, a determination of probable cause (PC) was impossible. Therefore, Provost's misconduct is exactly the type of law enforcement misconduct — 'extreme circumstances' that violated my constitutionally protected right to life, liberty, security and due process."*

Stated separately, the four (4) allegations are these:

Allegation One. The affiant, Special Agent Provost, deliberately concealed that the HIPAA count could not be brought against Mr. Cipolla directly, because he was not a "covered entity" and the records belonged to a covered entity, Art Boese, who authorized Mr. Cipolla's access to the business records.

Allegation Two. The affiant deliberately concealed that Ed Jones admitted to discarding the records before Mr. Cipolla was charged, and deliberately omitted Jones' admission from his affidavit — eliminating the factual premise that Mr. Cipolla obtained or disclosed patient records that still existed.

Allegation Three. The affiant deliberately concealed that Art Boese, Avalon's owner, was a "covered entity" who could've been charged, should've been charged and charged Mr. Cipolla instead.

Allegation Four. Kathy Hochul, then Erie County Clerk, was a public official involved in the response to the discovery of the records, found in a dumpster by Adams and Garlick, and was interviewed by the FBI. Mr. Cipolla contends that her public-facing involvement was the material cause for the investigation and charges. Her husband, William Hochul, was then the United States Attorney for the Western District of New York.

## III. THE ORDER ADDRESSED AND DISMISSED ONLY ONE (1) OF FOUR (4) ALLEGED FRAUDS AND MADE NO FINDING ON THE OTHER THREE (3)

### *A. The order collapsed four (4) allegations into one (1).*

The order described the misconduct theory this way: "He (Mr. Cipolla) argues that expungement is appropriate because the underlying HIPAA charges were legally impossible and the FBI agent engaged in fraud and perjured himself to the court in his affidavit in support of the complaint by failing to advise the Court that he 'could not legally be charged under the HIPAA statute as a matter of law.'" Dkt. 15 at 2. That sentence defines the alleged fraud as a single omission: the failure to disclose a legal impediment to the charge.

The order then dismissed that single theory: "Mr. Cipolla's assertion that 'he could not legally be charged under the HIPAA statute as a matter of law' . . . does not demonstrate law enforcement misconduct or otherwise establish a violation of Mr. Cipolla's constitutionally protected rights." Dkt. 15 at 5. Having defined the fraud as one (1) thing instead of four (4), the order then rejected that one thing.

Nothing in the order mentions Ed Jones' admission. Nothing in the order addresses Art Boese's, Avalon's owner, status as a "covered entity", his responsibility for safeguarding the patient records, or the decision not to charge Boese. Nothing in it mentions Kathy Hochul's alleged role or her relationship to the United States Attorney William Hochul or separately examines any resulting appearance of a conflict of interest. The order did not find these allegations untrue. It did not find them immaterial. It did not find them procedurally barred. It did not address them at all.

The order did not separately state or decide these three allegations. This omission is pertinent to the extent the allegations were presented below. Mr. Cipolla also asks the district judge to consider the Hochul-related allegation if it is deemed newly raised, or permit a focused supplement.

The contrast is set out below.

| Alleged fraud | What Dkt. 15 says about it | Finding |
|---|---|---|
| 1. The affiant, Agent Provost, concealed that Mr. Cipolla was not a "covered entity" and could not be charged directly under 42 U.S.C. § 1320d-6. | Addressed and rejected at p. 5 as failing to show misconduct or a constitutional violation. | Rejected, without citation to the statute, the regulations, or the Department's published interpretation. |
| 2. The affiant concealed Ed Jones' admission that he, not Mr. Cipolla, discarded the records before the charged conduct, and affiant deliberately omitted Jones' admission from his affidavit. | Not mentioned. | None. |
| 3. The affiant concealed that Art Boese was a "covered entity" who could be charged, yet charged Mr. Cipolla, an uncovered entity, instead. | Not mentioned. | None. |
| 4. Kathy Hochul, then Erie County Clerk, was publicly involved in the response to the discovery of the records that DMV employees Adam and Garlick found and was interviewed by the FBI. Mr. Cipolla alleges that Kathy Hochul's involvement was the material cause for the charges. Kathy's husband, William Hochul, was then the United States Attorney for the Western District of NY. | Not mentioned. | None. |

***B. The order did not separately address the three (3) additional allegations.***

The question in assessing expungement is not whether any single allegation, standing alone, compels relief. It is whether the relevant allegations, taken together, amount to the "extreme circumstances" the cases describe. That is a totality judgment. See United States v. Schnitzer, 567 F.2d 536, 539–40 (2d Cir. 1977) (requiring "delicate balancing of the equities" in each case); In re Farkas, 783 F. Supp. at 103 (relief "reserved strictly for extreme cases of government

misconduct"). Mr. Cipolla requests consideration of the relevant allegations to the extent they were properly presented, and leave to supplement if appropriate.

Judge Schroeder's order did not purport to find that the other three (3) allegations, even if true, would not matter. It did not reach them. The order's one sentence about the relevance of the circumstances — that whether they bear on an Italian citizenship application "is a matter most appropriately considered by the government of Italy rather than this Court," Dkt. 15 at 6 — defers a question about the Paraguay foreign consequence. It says nothing about whether the government procured the record by fraud.

Mr. Cipolla argues that the Court should consider the allegations that were properly presented; to the extent the Hochul-related allegation is new, he asks that it be considered or that he be allowed to supplement. See Schnitzer, 567 F.2d at 540 ("Any particular request for expungement must be examined individually on its merits to determine the proper balancing of the equities.").

***C. The order dismissed, without addressing, disputed allegations of fraud on the government's unsupported, unsworn and unsigned paper record.***

The Government "disputes Mr. Cipolla's allegations of government misconduct." Dkt. 10. A denial in an attorney's brief is not evidence. Kulhawik v. Holder, 571 F.3d 296, 298 (2d Cir. 2009). The order did not hold a hearing. It did not identify which facts were disputed. It did not explain why any of the four allegations failed as a matter of law. It simply concluded that "extreme circumstances" were absent. Dkt. 15 at 5.

Where a movant alleges specific acts of official fraud, ties them to the record, and the government denies them in an unsupported unsworn unsigned memorandum only, the court must either hold an evidentiary hearing or explain why the allegations are insufficient as a matter of law The order did neither. That is the definition of a ruling that cannot stand: there are no findings to test.

## IV. THE ORDER APPLIED THE WRONG QUESTION

***A. The motion challenged the lawfulness of the arrest, not the accuracy of the transcription.***

The order began its analysis by observing that Mr. Cipolla "does not allege that his FBI CHRI is inaccurate, but instead concedes that it 'explicitly notes that the investigation into federal charges . . . was closed . . . due to declination by the United States Attorney's Office.'" Dkt. 15 at 5. That is true, and it is beside the point. Mr. Cipolla argues that the arrest and charges were unlawful because the affidavit that produced them concealed, at least, four (4) material facts. An accurate record of an unlawful arrest is still a record of an unlawful arrest.

The distinction is not semantic; it is the difference between the two lines of authority the order cited. Cases about inaccurate records ask whether the entry misstates what happened. Cases about unlawful arrests ask whether the government was entitled to make the record at all. Mr. Cipolla's motion belongs to the second line. The order answered only the first.

***B. The consequence cases the order relied on all involved lawful arrests, not unlawful arrests.***

The order's remaining authorities denied relief to people whose arrests were lawful and whose complaints were about the consequences of an accurate record: M.D. v. United States, 671 F. Supp. 3d 297 (E.D.N.Y. 2023); Ruiz v. United States, 2019 WL 3388817 (E.D.N.Y. July 25, 2019); Grunstein v. United States, 2025 WL 1235120 (E.D.N.Y. Apr. 29, 2025); Sandy v. United

States, 2008 WL 4865993 (E.D.N.Y. Nov. 7, 2008); and In re Farkas, 783 F. Supp. at 103–04. None involved allegations that the affidavit supporting the charges deliberately concealed material facts (fraud).

Those cases establish that hardship alone is not enough. They do not establish that fraud plus hardship is not enough. Judge Schroeder's order used them as though the two questions were the same.

### *C. The order treated its probable-cause determination as immune from the challenge directed at it.*

The order reasoned that "[t]he decision not to pursue the criminal charges beyond the procedural posture of a criminal complaint does not negate the Court's determination of probable cause." Dkt. 15 at 5. That assumes the conclusion. The Court's probable-cause determination rested entirely on Special Agent Provost's affidavit. If that affidavit omitted four (4) material facts, then the probable cause determination is precisely what must be re-examined — not the premise from which analysis begins.

That is the landmark holding of Franks v. Delaware, 438 U.S. 154 (1978). Where a defendant makes "a substantial preliminary showing that a false statement knowingly and intentionally, or with reckless disregard for the truth, was included by the affiant in the warrant affidavit," and the statement is "necessary to the finding of probable cause," the Fourth Amendment requires a hearing. Id. at 155–56. The same principle governs material omissions. See United States v. Canfield, 212 F.3d 713, 717–18 (2d Cir. 2000). If the omitted facts would have defeated probable cause, the warrant — or here, the complaint — cannot stand on the strength of what was left out.

The order never applied that framework. It did not ask whether Mr. Cipolla had made the threshold showing. It did not identify the omissions it was evaluating. It did not ask whether probable cause would survive if Ed Jones' admission, Boese's "covered entity' status, acknowledgment of responsibility, authorization and access, Mr. Cipolla's non covered entity status and Kathy Hochul's relationship to William Hochul were restored to the affidavit. The order held, in effect, that a probable cause (PC) finding validates the affidavit that produced the PC finding. That reasoning is circular, and it is contrary to law.

Mr. Cipolla does not ask this Court to find the fraud proven on the papers. He asks for the hearing that Franks contemplates, or at minimum for a finding on whether the threshold showing has been made. The order granted neither.

## V. FRAUD BY LAW ENFORCEMENT IS THE PARADIGM CASE (EPITOME) FOR EXPUNGEMENT, NOT AN EXCEPTION TO IT

### *A. The expungement remedy exists to reach records produced by unlawful government action.*

The Second Circuit has long held that a court sitting in a criminal prosecution "has ancillary jurisdiction to issue protective orders regarding dissemination of arrest records," and that expungement "lies within the equitable discretion of the court." Schnitzer, 567 F.2d at 538–39. That jurisdiction is not limited to correcting clerical mistakes, it reaches records that are the product of unlawful government actions. As the Ninth Circuit put it, "a district court's ancillary jurisdiction is limited to expunging the record of an **unlawful arrest,** unlawful conviction, or to correcting a clerical error." United States v. Sumner, 226 F.3d 1005, 1014 (9th Cir. 2000).

That formulation helps rather than hurts Mr. Cipolla. An arrest procured by an affidavit that deliberately conceals material facts is an unlawful arrest. It is not a "valid" arrest. The Second Circuit's later decision in Doe v. United States, 833 F.3d 192, 196–97 (2d Cir. 2016), confirms the boundary: Schnitzer "applies only to lawful arrest records," and the court lacked jurisdiction to expunge "a valid conviction." Mr. Cipolla has no conviction. He has an arrest record from a dismissed complaint (where the sole complainant deliberately concealed material facts), which is the precise category Schnitzer governs.

The Fifth Circuit has likewise held that expungement is available against executive-branch records where the petitioner asserts "an affirmative rights violation by executive branch officers or agencies." Sealed Appellant v. Sealed Appellee, 130 F.3d 695, 700–01 (5th Cir. 1997). The court drew that line precisely because **expungement is a remedy for violated rights, not a gratuity**. Mr. Cipolla asserts exactly such a violation: an affidavit that concealed material facts in order to obtain criminal charges violates his right to life, liberty, security and due process.

***B. Courts have ordered expungement where the government's own conduct (fraud) produced the record.***

In United States v. McLeod, 385 F.2d 734 (5th Cir. 1967), the court found that arrests had been made to **harass** voting-rights workers and ordered that the government "expunge from the record all arrests and convictions resulting from the prosecutions" at issue. Id. at 750. The court directed the district court to "take whatever additional action is necessary to return individuals to their status quo ante." Id. The remedy was not limited to correcting inaccurate entries. It was designed to undo the record the government had improperly (fraudulently) created. Likewise, Mr. Cipolla claims his arrest and subsequent arrest of he and his wife were made to **harass** and that the district court should return him to his status quo ante the charges

In Wheeler v. Goodman, 306 F. Supp. 58 (W.D.N.C. 1969), the court ordered expungement where police had misused arrest records to the detriment of the individuals involved. In Sullivan v. Murphy, 478 F.2d 938 (D.C. Cir. 1973), the court ordered expungement where mass arrests made any individualized probable-cause determination impossible. In Kowall v. United States, 53 F.R.D. 211 (W.D. Mich. 1971), expungement followed an arrest under a statute later held unconstitutional. In United States v. Lau, 2003 WL 22698810, at *2 (S.D.N.Y. Nov. 14, 2003), the case that Judge Schroeder's order cited, the court held that expungement is "proper when an arrest was conducted without probable cause."

The pattern is consistent. In each case the record was accurate as a transcription. What made it expungeable was the government's misconduct in creating it. That is precisely Mr. Cipolla's claim.

***C. A record procured by fraud is not "an accurate record of a valid arrest."***

Fraud by law enforcement is not a lesser form of misconduct, it is the form that destroys the reliability of everything built on it.

A conviction obtained through the knowing use of false evidence violates due process. Mooney v. Holohan, 294 U.S. 103, 112 (1935) ("deliberate deception of court and jury by the presentation of testimony known to be perjured"); Napue v. Illinois, 360 U.S. 264, 269 (1959) ("a conviction obtained through use of false evidence, known to be such by representatives of the State, must fall"). The suppression of evidence favorable to the accused does the same. Brady v. Maryland, 373 U.S. 83, 87 (1963). An affidavit that conceals material facts to obtain a charge is

the same species of conduct at an earlier stage: it deprives the court of the information it needs to decide whether the charge should issue at all.

The Supreme Court has been emphatic that such conduct is an injury to the court, not merely to the accused. In Hazel-Atlas Glass Co. v. Hartford-Empire Co., 322 U.S. 238 (1944), the Court held that "tampering with the administration of justice in the manner indisputably shown here involves far more than an injury to a single litigant. It is a wrong against the institutions set up to protect and safeguard the public, institutions in which fraud cannot complacently be tolerated consistently with the good order of society." Id. at 246. The Court added: "The public welfare demands that the agencies of public justice be not so impotent that they must always be mute and helpless victims of deception and fraud." Id.

Hirabayashi v. United States, 828 F.2d 591 (9th Cir. 1987), shows what that principle requires in practice. There, War Department officials had altered a report and tried to destroy the original copies before issuing the final version; the government then relied on the altered record. Id. at 593–94. More than four decades later, the court of appeals affirmed the vacatur of the conviction that record had produced. Id. Fraud does not become less actionable because the government succeeded in keeping it hidden, and the passage of time does not convert a tainted record into a valid one.

***D. The Department's own interpretation of the HIPAA provision confirms that Mr. Cipolla's first allegation was a substantial legal question.***

Title 42 U.S.C. § 1320d-6(a) punishes a person who "knowingly and in violation of this part" obtains or discloses individually identifiable health information. The phrase "this part" refers to Part C of the Administrative Simplification provisions, and 42 U.S.C. § 1320d-1(a) limits the standards adopted under that Part to health plans, health care clearinghouses, and specified health care providers. The Department of Justice (DOJ) Office of Legal Counsel (OLC) has addressed the consequence directly: covered entities, and individuals accountable under general principles of corporate criminal liability, "may be prosecuted directly" under § 1320d-6, while "[o]ther persons may **not** be liable directly under this provision." U.S. Dep't of Justice, Office of Legal Counsel, Scope of Criminal Enforcement Under 42 U.S.C. § 1320d-6 (June 1, 2005).

Mr. Cipolla does not ask this Court to hold that the OLC opinion settles the case. He asks the Court to notice what the order did not: the complaint charged him directly under § 1320d-6(a)(2), (a)(3), and (b)(3), and the availability of those charges against a person who was not a "covered entity" was — and is — a substantial legal question, answered in the negative by the DOJ's own lawyers. The order rejected the theory in a single sentence, without citing the statute, the regulations, or the OLC opinion. That is not deference to a magistrate judge's discretion. It is a failure to engage the governing law.

***E. Applied here, Mr. Cipolla's allegations describe a record the government was not entitled to create.***

Allegation One goes to the charging theory. Under the DOJ's own reading of § 1320d-6, direct liability was unavailable against a non-covered person. The affiant presented the charge as a direct violation without disclosing that obstacle.

Allegation Two goes to the factual premise. If Ed Jones had already discarded the records, then the conduct charged — obtaining and disclosing patient information — could not have

occurred as alleged. An affidavit that omitted that admission withheld the material fact most likely to defeat probable cause.

Allegation Three goes to the legal premise. If Boese was the "covered entity", and if he authorized the access, then there was no **predicate** offense by a covered entity for Mr. Cipolla to aid or abet. The Government charged the one participant who could not be liable directly and did not charge the one who could.

Allegation Four concerns the independence of the charging decision. Kathy Hochul, then Erie County Clerk, was publicly involved in the events surrounding discovery of the records and was interviewed by the FBI. Mr. Cipolla alleges that her involvement was the material cause for the charges. He believes that, more likely than not, the charge would not have been lodged without her public-facing involvement; that is his inference, not an adjudicated finding. Kathy Hochul's husband, William Hochul, was then the United States Attorney for this District. Mr. Cipolla requests inquiry into any relevant communications, actual participation in the charging decision, and screening or recusal. At the least, there's a glaring appearance of impropriety.

Together, the allegations describe charges that Mr. Cipolla contends could not have issued on the facts as he alleges them, under a theory that Mr. Cipolla contends was legally unavailable, following public involvement by an official whose spouse headed the prosecuting office; he alleges that Kathy Hochul's involvement was the material cause for the charges. Mr. Cipolla contends that the other alleged omissions, if proven material and deliberately or recklessly made, undermine the probable-cause determination. If the applicable standard is met, he asks the Court to expunge the resulting record.

## VI. SPECIFIC OBJECTIONS

### *A. The individual equities and the foreign consequence require express analysis.*

Mr. Cipolla objects to Dkt. 15, pp. 5–6, insofar as the order finds the circumstances insufficient but discusses the relevance of the arrest only as a matter for Italy, without explaining the separate Paraguay-specific consequence acknowledged at p. 2. He does not contend that the order failed to mention Paraguay altogether. He asks the district judge to assess whether, if the full memorandum and an adequate evidentiary foundation support the asserted barrier, that consequence together with the dismissed case and the particular record justify relief (expungement) or further development.

Schnitzer recognizes ancillary jurisdiction over protective orders concerning dismissed-case arrest records and requires an individualized balance. 567 F.2d at 538–40. The power is narrow: dismissal and adverse consequences alone do not automatically establish the extreme circumstances required for expungement. The law-enforcement interest in an effective records system deserves substantial weight. Id. at 539–40 & n.6. Doe v. United States, 833 F.3d at 196–97, (2d. Cir. 2016) distinguished the dismissed-arrest context from a request to erase a valid conviction.

The asserted Paraguayan identification barrier is offered as a particular administrative consequence, not merely a fear of inconvenience during travel. Unlike the hypothetical harm rejected in Schnitzer, the reply identified a country, a type of identification document, and the obstacle the foreign memorandum describes. Dkt. 13, p. 3. Mr. Cipolla asks for individualized consideration, not a presumption that a foreign-law assertion is established.

***B. The Court should address the narrower, truthful disposition-related relief.***

Mr. Cipolla objects to Dkt. 15, pp. 5–6, to the extent the denial leaves unaddressed his alternative request for a complete and accurate reflection of the Rule 48(a) dismissal and the declination. Dkt. 13, p. 6. The CHRI's declination notation is not itself shown to be false. Whether it fully communicates the judicial dismissal, and whether the first-entry cross-reference accurately and completely describes the disposition of each relevant charge, requires comparison with the certified docket and the source agency's record. The CHRI also labels the HIPAA entry as Title 18, while the court's order identifies the provision as Title 42. Compare Dkt. 7, Ex. B, p. 10, with Dkt. 15, p. 1. That apparent title discrepancy does not itself establish the foreign harm and should be verified with the source agency. However, dismissal, declination and hardship coupled with law enforcement misconduct (fraud) that would've precluded a determination of probable cause is exactly the extreme circumstances that require Expungement.

M.D. v. United States, 671 F. Supp. 3d 297, 298–302 (E.D.N.Y. 2023), is persuasive rather than binding and is materially different: there the court found an unresolved inaccuracy under which a dismissed charge repeatedly appeared pending. Mr. Cipolla does not claim the present record has that same defect. The case illustrates why accurate disposition information matters, not an automatic entitlement to expungement of a correctly recorded arrest. The administrative procedure in 28 C.F.R. § 16.34 permits a subject to challenge records believed inaccurate or incomplete; it does not require deletion of an accurate arrest unless the arrest was based on a probable cause (PC) determination where deliberately concealed material facts (fraud), would've precluded the PC determination.

If complete expungement is not justified, Mr. Cipolla requests a specific ruling on whether an authorized correction, supplementation, an accurately worded disposition certification, or another narrow protective order is appropriate and within the Court's power. Any directive should preserve a truthful account and protect legitimate law-enforcement needs, not fraud. No representation is made that a disposition letter alone will satisfy foreign officials.

***C. The alleged omissions should be evaluated against the complete complaint and all charged offenses.***

Mr. Cipolla objects to Dkt. 15, pp. 5–6, to the extent the ruling does not separately analyze his dispute over authorization, knowledge, and alternative access in responding to the Government's § 1001 argument. Dkt. 13, pp. 3–4. The original affidavit disclosed Boese's authorization for Mr. Cipolla to access business records, and omitted Boes's legal responsibility to safeguard patient records. Dkt. 1, ¶¶ 18, 20, 22–24, reproduced at Dkt. 13, pp. 65–69. Mr Cipolla disputes the completeness and accuracy of Provost's account and any allegedly false or omitted detail and its materiality must be identified and supported. Dismissal or declination does not defeat the earlier probable-cause determination unless the determination was established by Agent Provost's deliberate concealment of material facts (fraud) that would've made that PC determination impossible.

Mr. Cipolla further objects that Judge Schroeder's order omitted Ed Jones' admission that he threw out the records, not Mr. Cipolla. Mr. Cipolla maintains that the FBI targeted him, a non-covered entity, did not pursue Art Boese, the facility owner, who was a "covered entity" under HIPAA that acknowledged responsibility and authorized his access. The order did not address the allegation that Kathy and William Hochul were in a glaring conflict of interest. He argues that the deliberate concealment of a material facts is fraud, and that such misconduct by Special

Agent Provost (law enforcement) establishes "extreme circumstances" that clearly justify expungement. He asks the Court to address these contentions in assessing his motion.

The legal premise deserves care rather than dismissal. Section 1320d-6(a), as amended in 2009 and effective in 2010, speaks of a "person" who obtains or discloses covered-entity information without authorization. The DOJ's OLC has concluded that it does not, except through aiding-and-abetting or conspiracy principles that do not exist in this case. The point is moot because Provost's own affidavit admits that Art Boese authorized Mr. Cipolla's access to the business records and that Ed Jones through the records in a dumpster, not Mr. Cipolla. The charging allegations, the dates of the alleged conduct, the asserted authorization, and the information at issue, must therefore be examined. Mr. Cipolla does not ask the Court to conclude that his status alone made liability impossible; he asks the Court to examine the questions the order passed over. The independent § 1001 theory must also be assessed.

Franks v. Delaware, 438 U.S. 154, 155–56, 171–72 (1978), concerns suppression in a warrant proceeding. As an analytical guide, a challenge to an affidavit must identify the particular asserted falsehood or omission, offer competent support for deliberate or reckless conduct, and explain materiality to probable cause. See also United States v. Canfield, 212 F.3d 713, 717–18 (2d Cir. 2000). Mr. Cipolla asks for Expungement or, alternatively, leave to provide a focused declaration on the relevant portions of the complaint and affidavit, and for a hearing, if warranted, on the relevant allegations, including Allegation Four if the Court permits him to supplement.

***D. Unsupported advocacy should be distinguished from evidence, without shifting the movant's burden.***

Mr. Cipolla objects insofar as any disputed fact outside the record is credited solely because it appears in the Government's unsupported unsworn unsigned memorandum. Kulhawik v. Holder, 571 F.3d 296, 298 (2d Cir. 2009), recognizes that an attorney's unsworn statements in a brief are **not** evidence, while sworn statements can form part of the evidentiary record subject to assessment, including personal knowledge. The sole complainant's affidavit lacked any personal knowledge and, therefore, the charges lacked probable cause. Mr. Cipolla's motion and replies were signed under penalty of perjury. In his Supplemental Reply, Aug. 24, 2026, pp. 1–2. Further, Mr. Cipolla states that the Government did not rebut his motion, reply or supplemental reply with evidence and did not sign their response under penalty of perjury. Therefore, the government's response is, in actuality, a non-response entitling Mr. Cipolla to a judgment as a matter of law.

Mr. Cipolla requests that any disputed factual finding be grounded in the existing record or competent proof, with an opportunity for a targeted supplement if the Court considers one appropriate.

## VII. REQUESTED DISPOSITION

Mr. Cipolla requests that a district judge:

(1) Identify the applicable review procedure and assign a district judge if needed;

(2) Vacate Dkt. 15 and find that the order resolved only one of the four (4) alleged frauds;

(3) Make findings on Allegations Two, Three, and Four, or remand to the magistrate judge with instructions to make them after an evidentiary hearing;
(4) Determine whether the affidavit, with the omitted facts restored, supported probable cause under Franks and Canfield;
(5) Grant the original expungement request if the Court finds the extreme circumstances the cases require;
(6) Alternatively, permit a focused evidentiary submission and, if warranted, a hearing, then reconsider expungement and the narrower disposition-related request; and
(7) Correct the clerical errors in the order, which is dated "October 29, 2006," Dkt. 15 at 6, and which cites 28 U.S.C. § 536(a)(1) for the Attorney General's record-keeping duty, see 28 U.S.C. § 534(a)(1); see also Fed. R. Crim. P. 36.

Mr. Cipolla requests de novo consideration if the disposition required a district judge's final determination, or review under the applicable standard if the magistrate was authorized to decide it. See LoSacco v. City of Middletown, 71 F.3d 88, 91–92 (2d Cir. 1995). He also seeks a certified copy of any final disposition order and such other truthful, lawful relief as the Court finds appropriate. He does not ask this closed criminal docket to adjudicate damages, add third parties, or resolve the separate tort allegations.

**CERTIFICATION UNDER W.D.N.Y. LOCAL CRIMINAL RULE 59(c)(3)**

The principal factual and legal contentions concerning individualized hardship, the disputed affidavit and § 1001 allegation, correction or complete disposition information, and the effect of the Government's unsworn memorandum were presented to the magistrate judge in Dkts. 7 and 13 and the August 24, 2026 supplemental reply. The Ed Jones and Boese contentions are restated here. Whether the Hochul-related contention was previously presented requires verification; it is identified below if new.

The following matters are identified as new or newly emphasized, with the reason each appears now:

(a) The apparent Title 18/Title 42 discrepancy in the FBI entry is newly identified as a specific possible correction; it was not separately presented below and is identified now after review of the underlying record.

(b) These objections newly address the reasons and review procedure for the October 29, 2026 order, which did not exist when the prior submissions were filed.

(c) The 2009 statutory amendment and its 2010 effective date are identified as a qualification to the earlier HIPAA theory; this clarification was not expressly presented below and is offered now to correct and fairly present that legal theory.

(d) The Office of Legal Counsel opinion is offered as authority supporting an argument already made, not as a new argument.

(e) If the Hochul-related conflict allegation was not presented in Dkt. 7 or Dkt. 13, it is new. Mr. Cipolla seeks its consideration or leave to supplement, without claiming error on an issue not presented.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct. All rights reserved.

Respectfully submitted,

______________________ Dated: November 17, 2026 Bowmansville, NY

John Edward Cipolla, Defendant pro se
6495 Transit Rd.
Bowmansville, New York [14026]
(808) 206-2221, jcipolla@aol.com

**CERTIFICATE OF SERVICE**

I hereby certify that on November 17, 2026, I filed the foregoing Notice of Objections and Request for District Judge Review with the Clerk of the District Court ~~via the CM/ECF system~~ JC. I further certify that the foregoing was served upon the United States Attorney's Office for the Western District of New York by mailing it first-class to counsel of record: Aaron J. Mango, Assistant United States Attorney, United States Attorney's Office, Western District of New York, 138 Delaware Avenue, Buffalo, NY 14202, (716) 843-5882, Aaron.Mango@usdoj.gov .

______________________

John Edward Cipolla